IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| RAYJEAN VIRUET | ) | CASE NO. |
| 403 May Street | ) | |
| Fremont, Ohio 43420 | ) | JUDGE: |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **COMPLAINT FOR DAMAGES** |
| | ) | **AND REINSTATEMENT** |
| WHIRLPOOL CORPORATION, INC. | ) | |
| 119 Birdseye Street | ) | **JURY DEMAND ENDORSED** |
| Clyde, Ohio 43410 | ) | **HEREIN** |
| | ) | |
| **Serve also:** | ) | |
| Whirlpool Corporation, Inc. | ) | |
| c/o Corporation Service Company | ) | |
| 50 West Broad Street, Suite 1330 | ) | |
| Columbus, Ohio 43215 | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff, Rayjean Viruet, by and through undersigned counsel, as her Complaint against

the Defendants, states and avers the following:

**PARTIES AND VENUE**

1.  Viruet is a resident of the city of Fremont, county of Sandusky, state of Ohio.

2.  Whirlpool Corporation, Inc. ("Whirlpool") is a foreign corporation that operated a business

    located at 119 Birdseye Street, Clyde, Ohio 43410.

3.  Whirlpool was at all times hereinafter mentioned an employer within the meaning of 42 U.S.C.

    § 2000e *et seq*.

4.  Whirlpool was at all times hereinafter mentioned an employer within the meaning of R.C.

    § 4112.01 *et seq*.

## JURISDICTION & VENUE

5. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that Viruet is alleging a Federal Law Claim Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq*.

6. All material events alleged in this Complaint occurred in Sandusky County.

7. This Court has supplemental jurisdiction over Viruet's state law claims pursuant to 28 U.S.C. § 1367 as Viruet's state law claims are so closely related to her federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

9. Within 300 days of the conduct alleged below, Viruet filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 532-2021-02333 against Whirlpool.

10. On August 9, 2021, the EEOC issued and mailed a Notice of Right to Sue letter to Viruet regarding the Charge of Discrimination.

11. Viruet received her Right to Sue letter from the EEOC which has been attached hereto as Plaintiff's Exhibit A.

12. Viruet has filed this Complaint within 90 days of the issuance of the Notice of Right to Sue letter.

13. Viruet has properly exhausted her administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

## FACTS

14. Viruet is a former employee of Whirlpool.

15. Viruet began working for Whirlpool on or around September 2, 2020.

16. Whirlpool employed Viruet as an Operator.

17. Viruet had a strong history of performance with Whirlpool.

18. Viruet did not have any history of meaningful discipline.

19. Derrick Yeager was Viruet's immediate supervisor.

20. During all material events asserted herein, Yeager has and/or had authority to hire, fire, and/or discipline employees.

21. Yeager did not participate in the decision to hire Viruet.

22. Lisa Hall was Viruet's area coordinator.

23. During all material events asserted herein, Hall has and/or had authority to hire, fire, and/or discipline employees.

24. Hall did not participate in the decision to hire Viruet.

25. During her employment, Viruet formed friendships with her co-workers, including Ladarius McCarty.

26. Whirlpool employed L. McCarty as an Operator.

27. During the course of their friendship, McCarty was married to Imari McCarty.

28. Whirlpool employed I. McCarty as an Operator.

29. On or around December 18, 2020, I. McCarty approached Viruet in the employee parking lot of the Whirlpool facility ("December 18 Encounter").

30. During the December 18 Encounter, I. McCarty followed Viruet to her car during Viruet's lunch break, yelling the whole way.

31. During the December 18 Encounter, I. McCarty accused Viruet of engaging in sexual contact with L. McCarty.

32. I. McCarty did not accuse male employees of having sexual contact with L. McCarty.

33. I. McCarty accused Viruet of having sexual contact with L. McCarty because she was a female.

3

34. During the December 18 Encounter, Viruet denied engaging in sexual contact with L. McCarty.

35. I. McCarty made the December 18 Encounter in an effort to make Viruet quit.

36. Viruet reported the December 18 Encounter to Hall.

37. Viruet reported to Hall that the December 18 Encounter constituted gender discrimination.

38. Viruet reported to Hall that the December 18 Encounter constituted sexual harassment.

39. Hall had a duty to investigate Viruet's complaint of discrimination and sexual harassment.

40. Upon information and belief, Defendant has a policy requiring investigations following receipt of a complaint of discrimination and sexual harassment.

41. An investigation should include interviewing the complainant.

42. An investigation should include interviewing the subject of the complaint.

43. An investigation should include interviewing the subject of the reported incident.

44. An investigation should include interviewing witnesses to the reported incident.

45. An investigation should include getting a written statement from the complainant.

46. An investigation should include getting a written statement from the subject of the complaint.

47. An investigation should include getting a written statement from the subject of the reported incident.

48. In response to Viruet's complaint of discrimination and sexual harassment, Hall did not interview I. McCarty.

49. In response to Viruet's complaint of discrimination and sexual harassment, Hall did not get a written statement from Viruet.

50. In response to Viruet's complaint of discrimination and sexual harassment, Hall did not get a written statement from I. McCarty.

51. In response to Viruet's complaint of discrimination and sexual harassment, Hall did not take corrective action against I. McCarty.

52. Hall ratified I. McCarty's discriminatory and harassing conduct in failing to conduct an investigation into Viruet's discrimination and sexual harassment complaint.

53. Hall ratified I. McCarty's discriminatory and harassing conduct in failing to discipline I. McCarty following Viruet's discrimination and sexual harassment complaint.

54. Upon information and belief, Hall investigated the complaints from male employees.

55. Upon information and belief, Hall took corrective action following complaints from male employees.

56. Hall failed to investigate Viruet's complaints because she is a female.

57. Hall failed to take corrective action following Viruet's complaints because she is a female.

58. Hall failed to investigate Viruet's discrimination and sexual harassment complaint in an effort to make Viruet quit.

59. On or around December 19, 2020, Viruet heard rumors that I. McCarty was planning another confrontation with Viruet.

60. Viruet informed Hall of the rumors that I. McCarty was planning another confrontation.

61. Hall instructed Viruet to speak with Yeager.

62. After Viruet informed Yeager about I. McCarty's plan for another confrontation, Yeager suggested that Viruet ask someone to accompany her to her car.

63. On or around December 23, 2020, I. McCarty confronted Viruet again ("December 23 Encounter").

64. During the December 23 Encounter, I. McCarty threatened to key Viruet's car.

65. During the December 23 Encounter, I. McCarty threatened physical violence against Viruet.

66. I. McCarty made the December 23 Encounter in an effort to make Viruet quit.

67. On or around January 12, 2021, I. McCarty walked by Viruet at work and said "I'm going to whoop your ass, now go tell the office that" ("Whoop Ass Comment").

68. The Whoop Ass Comment created an unsafe work environment.

69. I. McCarty made the Whoop Ass Comment in an effort to make Viruet quit.

70. Also on or around January 12, 2021, I. McCarty found Viruet's house and left a note on the door addressed to Viruet's significant other accusing Viruet of having sexual contact with L. McCarty ("Significant Other Note").

71. I. McCarty made the Significant Other Note in an effort to make Viruet quit.

72. On or around January 15, 2021, Viruet's car was damaged while she was working ("Viruet Damaged Car").

73. The damage from the Viruet Damaged Car was consistent with the previous threats made by I. McCarty during the December 23 Encounter.

74. The Viruet Damaged Car incident created an unsafe work environment.

75. In response to the Viruet Damaged Car, Viruet filed a police report.

76. In response to the Viruet Damaged Car, Viruet complained to Yeager.

77. Yeager failed to investigate Viruet's complaints about the Viruet Damaged Car.

78. Yeager failed to take corrective action against I. McCarty following Viruet's complaints about the Viruet Damaged Car.

79. Yeager ratified I. McCarty's conduct in failing to conduct an investigation into Viruet's complaints about the Viruet Damaged Car.

80. Yeager ratified I. McCarty's conduct in failing to discipline I. McCarty following Viruet's complaints about the Viruet Damaged Car.

81. Upon information and belief, Yeager investigated the complaints from male employees.

82. Upon information and belief, Yeager took corrective action following complaints from male employees.

83. Yeager failed to investigate Viruet's complaints because she is a female.

84. Yeager failed to take corrective action following Viruet's complaints because she is a female.

85. Yeager failed to investigate or take corrective action following Viruet's complaints about the Viruet Damaged Car in an effort to make Viruet quit.

86. Yeager's failure to investigate Viruet's complaints or to take corrective action against I. McCarty following Viruet's complaints created an unsafe work environment.

87. Frustrated with Hall and Yeager's lack of response, Viruet complained about I. McCarty to Whirlpool's human resource department ("HR Complaint").

88. During the HR Complaint, Viruet complained about the December 18 Encounter, the December 23 Encounter, the Whoop Ass Comment, the Significant Other Note, and the Viruet Damaged Car, as well as Hall and Yeager's lack of response to her previous complaints.

89. Whirlpool's human resource department failed to investigate Viruet's HR Complaint.

90. Whirlpool's human resource department failed to take corrective action against I. McCarty following Viruet's HR Complaint.

91. Whirlpool's human resource department ratified I. McCarty's discriminatory and harassing conduct in failing to conduct an investigation into Viruet's HR Complaint.

92. Whirlpool's human resource department ratified I. McCarty's discriminatory and harassing conduct in failing to discipline I. McCarty following Viruet's HR Complaint.

93. Upon information and belief, Whirlpool's human resource department investigated the complaints from male employees.

94. Upon information and belief, Whirlpool's human resource department took corrective action following complaints from male employees.

95. Whirlpool's human resource department failed to investigate Viruet's complaints because she is a female.

96. Whirlpool's human resource department failed to take corrective action following Viruet's complaints because she is a female.

97. Whirlpool's human resource department failed to investigate or take corrective action following Viruet's HR Complaint in an effort to make Viruet quit.

98. Whirlpool's human resource department's failure to investigate Viruet's complaints or to take corrective action against I. McCarty following Viruet's complaints created an unsafe work environment.

99. Following the HR Complaint, Whirlpool issued Viruet a verbal warning ("Retaliatory Warning").

100. In the Retaliatory Warning, it stated that Viruet's employment would be terminated if there was another incident with I. McCarty.

101. Viruet had no control over I. McCarty's behavior.

102. On or around February 18, 2021, Whirlpool constructively discharged Viruet's employment.

103. A reasonable person would have found Viruet's working conditions to be so unusually adverse that a reasonable person would have felt compelled to resign.

104. Defendant intended to create working conditions that were so unusually adverse that it would force Viruet to quit.

105. I. McCarty's discriminatory and harassing behavior was so intolerable that she caused Viruet to fear returning to work.

106. Defendant's failure to investigate Viruet's complaints or take corrective action against I. McCarty following Viruet's complaints created a hostile work environment based on gender discrimination and sexual harassment.

107. Defendant constructively discharged Viruet's employment in retaliation for making complaints related to sexual harassment, gender discrimination, and workplace safety.

108. Upon information and belief, Defendant has a progressive disciplinary policy ("Progressive Discipline Policy").

109. Defendant has used the Progressive Discipline Policy when disciplining male employees.

110. Defendant has used the Progressive Discipline Policy when disciplining employees who have not complained of discrimination, sexual harassment, and workplace safety.

111. Under the Progressive Discipline Policy, Viruet had not received any meaningful discipline.

112. Under the Progressive Discipline Policy, Viruet had not received any written warnings.

113. Under the Progressive Discipline Policy, Viruet had not been suspended.

114. Defendant skipped steps under the Progressive Discipline Policy when they constructively discharged Viruet's employment.

115. Skipping steps under the Progressive Discipline Policy is an adverse employment action.

116. Skipping steps under the Progressive Discipline Policy is an adverse action.

117. Defendant intentionally skipped steps under the Progressive Discipline Policy when they constructively discharged Viruet's employment.

118. Defendant willfully made the decision to skip steps under the Progressive Discipline Policy when they constructively discharged Viruet's employment.

119. Constructively discharging Viruet's employment was an adverse employment action.

120. Constructively discharging Viruet's employment was an adverse action.

121. Defendant intentionally constructively discharged Viruet's employment.

122. Defendant willfully made the decision to constructively discharge Viruet's employment.

123. Defendant constructively discharged Viruet's employment in violation of the Progressive Discipline Policy because she is a female.

124. Defendant constructively discharged Viruet's employment in violation of the Progressive Discipline Policy because she complained about gender discrimination, sexual harassment, and workplace safety.

### COUNT I: HOSTILE WORK ENVIRONMENT ON THE BASIS OF GENDER DISCRIMINATION AND SEXUAL HARASSMENT UNDER 42 U.S.C. § 2000e *et seq.*

125. Viruet restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

126. During her employment with Whirlpool, Viruet was subjected to offensive and harassing conduct by I. McCarty based on her gender.

127. Defendant knew or should have known of the offensive and harassing conduct against Viruet by I. McCarty.

128. Viruet complained about the offensive and harassing conduct by I. McCarty to Hall.

129. Viruet complained about the offensive and harassing conduct by I. McCarty to Yeager.

130. Viruet complained about the offensive and harassing conduct by I. McCarty to Whirlpool's human resources department.

131. Defendant condoned, tolerated and ratified this harassing conduct.

132. This offensive and harassing conduct was severe and/or pervasive.

133. This offensive and harassing conduct was offensive to Viruet.

134. This offensive and harassing conduct interfered with Viruet's ability to perform her job duties.

135. Defendant's offensive and harassing conduct created a hostile and/or abusive work environment for Viruet.

136. Defendant's offensive and harassing conduct created a hostile and/or abusive work environment for the reasonable person similarly-situated to Viruet.

137. Viruet suffered emotional distress as a result of Defendant's conduct, and is entitled emotional distress damages pursuant to 42 U.S.C. § 2000e *et seq*.

138. As a direct and proximate result of Defendant's conduct, Viruet has suffered and will continue to suffer damages, including economic and emotional distress damages.

**COUNT II: HOSTILE WORK ENVIRONMENT ON THE BASIS OF GENDER DISCRIMINATION AND SEXUAL HARASSMENT UNDER R.C. § 4112.01 *et seq.***

139. Viruet restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

140. During her employment with Whirlpool, Viruet was subjected to offensive and harassing conduct by I. McCarty based on her gender.

141. Defendant knew or should have known of the offensive and harassing conduct against Viruet by I. McCarty.

142. Viruet complained about the offensive and harassing conduct by I. McCarty to Hall.

143. Viruet complained about the offensive and harassing conduct by I. McCarty toYeager.

144. Viruet complained about the offensive and harassing conduct by I. McCarty to Whirlpool's human resources department.

145. Defendant condoned, tolerated and ratified this harassing conduct.

146. This offensive and harassing conduct was severe and/or pervasive.

147. This offensive and harassing conduct was offensive to Viruet.

148. This offensive and harassing conduct interfered with Viruet's ability to perform her job duties.

149. Defendant's offensive and harassing conduct created a hostile and/or abusive work environment for Viruet.

150. Defendant's offensive and harassing conduct created a hostile and/or abusive work environment for the reasonable person similarly-situated to Viruet.

151. Viruet suffered emotional distress as a result of Defendant's conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

152. As a direct and proximate result of Defendant's conduct, Viruet has suffered and will continue to suffer damages, including economic and emotional distress damages.

**COUNT III: RETALIATION IN VIOLATION OF 42 U.S.C. § 2000e *et seq*.**

153. Viruet restates each and every prior paragraph of this complaint, as if it were fully restated herein.

154. As a result of the Defendant's discriminatory conduct described above, Viruet complained about the gender discrimination and sexual harassment she was experiencing.

155. Subsequent to Viruet reporting of sexual harassment to her supervisors and employer, Defendant issued Viruet an unjustified write up or corrective action.

156. Subsequent to Viruet reporting of sexual harassment to her supervisors and employer, Defendant constructively discharged her employment.

157. Defendant's actions were retaliatory in nature based on Viruet 's opposition to the unlawful discriminatory conduct.

158. Viruet suffered emotional distress as a result of Defendant's conduct, and is entitled emotional distress damages pursuant to 42 U.S.C. § 2000e *et seq*.

159. As a direct and proximate result of Defendant's retaliatory discrimination against and termination of Viruet, she suffered and will continue to suffer damages, including economic and emotional distress damages.

### COUNT IV: RETALIATION IN VIOLATION OF R.C. § 4112.01 *et seq.*

160. Viruet restates each and every prior paragraph of this complaint, as if it were fully restated herein.

161. As a result of the Defendant's discriminatory conduct described above, Viruet complained about the gender discrimination and sexual harassment she was experiencing.

162. Subsequent to Viruet reporting of sexual harassment to her supervisors and employer, Defendant issued Viruet an unjustified write up or corrective action.

163. Subsequent to Viruet reporting of sexual harassment to her supervisors and employer, Defendant constructively discharged her employment.

164. Defendant's actions were retaliatory in nature based on Viruet 's opposition to the unlawful discriminatory conduct.

165. Pursuant to R.C. § 4112.02(I), it is an unlawful discriminatory practice "to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section…"

166. Viruet suffered emotional distress as a result of Defendant's conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

167. As a direct and proximate result of Defendant's retaliatory discrimination against and termination of Viruet, she suffered and will continue to suffer damages, including economic and emotional distress damages.

## COUNT V: WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY

168. Viruet restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

169. A clear public policy exists and is manifested in Ohio statutes and/or administrative regulations, or in the common law, against terminating and/or retaliating against an employee because she engages in protected activity under Ohio law.

170. A clear public policy exists and is manifested in R.C. § 4101.11 stating that "[e]very employer shall furnish employment which is safe for the employees engaged therein," and "[n]o employer shall require, permit, or suffer any employee to go or be in any employment or place of employment which is not safe…"

171. The Ohio Supreme Court recognized that Ohio allows an individual to seek a public policy claim if she is terminated in retaliation for reporting to her employer that she is forced to work in an unsafe work environment. *Greeley v. Miami Valley Maintenance Contrs., Inc.*, (1990), 49 Ohio St.3d 228. *See also Pytlinski v. Brocar Products, Inc.*, 94 Ohio St.3d 77 (Ohio 2011); *Jenkins v. Cent. Transp., Inc.*, No. 09CV525, 2010 WL 420027 (N.D. Ohio Jan. 29, 2010).

172. A clear public policy exists and is manifested in Ohio statutes, and/or administrative regulations, or in the common law, against terminating an employee based on her complaints of dangerous, unsafe, or illegal activity.

173. Whirlpool's failure to ensure a safe work environment is in violation of Ohio public policy as recognized by the Ohio Supreme Court: "Ohio public policy favoring workplace safety is an independent basis upon which a cause of action for wrongful discharge in violation of public policy may be prosecuted." *Pytlinski v. Brocar Prod., Inc.*, 2002-Ohio-66, 94 Ohio St. 3d 77, 80, 760 N.E.2d 385, 388 (2002).

14

174. The United States District Court for the Southern District of Ohio held "*Pytlinski* is still controlling, it is still good law, and it could not be clearer: 'Ohio public policy favoring workplace safety is an independent basis upon which a cause of action for wrongful discharge in violation of public policy may be prosecuted.'" *Lightner v. CB&I Constructors, Inc.*, No. 14-CV-2087, 2016 WL 6693548, at *10 (S.D. Ohio Nov. 14, 2016) (quoting *Pytlinski*).

175. The United States District Court for the Southern District of Ohio held: "Retaliation against employees who file complaints regarding workplace safety, there, clearly contravenes the public policy of Ohio." *Hucke v. Marriott Hotel Services, Inc.*, 2008 WL 11352589, *4 (S.D. Ohio), *report and recommendation rejected on unrelated grounds in Hucke v. Marriott Hotel Services, Inc.*, 2008 WL 11352630 (S.D. Ohio).

176. The Tenth District Court of Appeals in *Blackburn v. Am. Dental Ctrs.*, 22 N.E.3d 1149, 1158 (10th Dist. 2014) held that R.C. §§ 4101.11 and 4101.12 "establish that there exists a clear public policy that is manifested in a state or federal constitution, statute, or administrative regulation in Ohio favoring workplace safety for employees and frequenters."

177. The Tenth District Court of Appeals in *Blackburn*, 22 N.E.3d 1149, at 1158 further held that Ohio has a public policy protecting employees who report unsafe workplaces.

178. Whirlpool did not make any changes following Viruet's complaint that I. McCarty's threats of violence created an unsafe working environment.

179. As Whirlpool did not investigate or take corrective action against I. McCarty following Viruet's complaints, it continued to instruct the employees to perform work in unsafe working conditions.

180. Whirlpool jeopardized Ohio's public policy ensuring a safe workplace in failing to take any action to ensure a safe workplace following Viruet's complaints.

181. On or around February 18, 2021, Defendant constructively discharged Viruet's employment.

182. Defendant's constructive discharge of Viruet's employment jeopardizes these public policies.

183. Defendant's constructive discharge of Viruet's employment was motivated by conduct related to these public policies.

184. Defendant had no overriding business justification for constructively discharging Viruet's employment.

185. As a direct and proximate result of Defendant's conduct, Viruet has suffered and will continue to suffer damages, including economic and emotional distress damages.

## DEMAND FOR RELIEF

WHEREFORE, Viruet demands from Defendant the following:

(a) Issue an order requiring Defendant to restore Viruet to one of the positions to which she was entitled by virtue of her application and qualifications, and expunge her personnel file of all negative documentation;

(b) An award against Defendant of compensatory and monetary damages to compensate Viruet for lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(c) An award of punitive damages against Defendant in an amount in excess of $25,000;

(d) An award of reasonable attorneys' fees and non-taxable costs for Viruet's claims as allowable under law;

(e) An award of the taxable costs of this action; and

(f) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,


*/s/ Taurean J. Shattuck*
Fred M. Bean (0086756)
Taurean J. Shattuck (0097364)
David Byrnes (0086975)
**THE SPITZ LAW FIRM, LLC**
25200 Chagrin Boulevard, Suite 200
Beachwood, OH 44122
Phone: (216) 291-4744
Fax:   (216) 291-5744
Email:  Fred.Bean@spitzlawfirm.com
        Taurean.Shattuck@spitzlawfirm.com
        David.Byrnes@spitzlawfirm.com


*Attorneys For Plaintiff*

## **JURY DEMAND**

Plaintiff Rayjean Viruet demands a trial by jury by the maximum number of jurors permitted.

/s/ Taurean J. Shattuck
Fred M. Bean (0086756)
Taurean J. Shattuck (0097364)
David Byrnes (0086975)
**THE SPITZ LAW FIRM, LLC**